UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES E. PORTERFIELD,       )
                                     )
                Plaintiff,      )     Case No. 1:13-cv-318
                                     )
v.                               )     Honorable Joseph G. Scoville
                                   )
COMMISSIONER OF          )
SOCIAL SECURITY,        )       **OPINION**
                                   )
                Defendant.    )
_____)

      This is a social security action brought under 42 U.S.C. § 405(g) seeking review of
a final decision of the Commissioner of Social Security denying plaintiff's claim for disability
insurance benefits (DIB). On April 5, 2011, plaintiff filed his application for benefits alleging a
March 15, 2004 onset of disability. (A.R. 160-66). Administrative *res judicata* stemming from the
denial of an earlier claim for DIB benefits barred any onset of disability date before May 19, 2007.
(A.R. 22, 89-98). The period at issue was further narrowed when plaintiff amended his claim to
allege a March 1, 2010 onset of disability. (A.R. 17, 37-38, 248). Plaintiff's disability insured status
expired on June 30, 2011. Thus, it was plaintiff's burden to submit evidence demonstrating that he
was disabled on or before June 30, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.
1990).

      Plaintiff's claim for DIB benefits was denied on initial review. On September 21,
2012, plaintiff received a hearing before an administrative law judge (ALJ), at which he was
represented by counsel. (A.R. 34-60). On October 12, 2012, the ALJ issued a decision finding that

plaintiff was not disabled. (A.R. 17-28). The Appeals Council denied review on January 24, 2013 (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 12). Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The Appeals Council "failed to perform a thorough review of the record, including a review of the recorded statement of Dr. Marvin Bleiberg in making its decision to deny review and failed to make these records a part of the administrative record."

2. The ALJ committed reversible error when he failed to find that plaintiff's L5-S1 radiculopathy was a severe impairment.

3. The ALJ committed reversible error in assessing plaintiff's residual functional capacity, credibility, and in concluding that plaintiff was capable of performing substantial gainful activity.

(Plf. Brief at iii, docket # 13). The Commissioner's decision will be affirmed.


## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability through June 30, 2011, but not thereafter. (A.R. 19). Plaintiff had not engaged in substantial gainful activity on or after March 1, 2010. (A.R. 19).

Plaintiff had the following severe impairments: "low back pain status post [2006] fusion surgery, asthma, and post-traumatic stress disorder." (A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that through his date last insured, plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can stand and/or walk for up to two hours out of an eight-hour workday. The claimant can sit for up to six hours out of an eight-hour workday. Due to back pain and allegations of breathing difficulties, allegations of post-traumatic stress syndrome, and allegations of an inability to get along with others; the claimant is limited to only occasional postural activities including: bending, stooping, kneeling, crouching, and crawling. He should avoid frequent or prolonged bending or twisting of the lower back. The claimant should be allowed to alternate between sitting and standing at will, provided he is not off task for more than 10 percent of his workday. He should be allowed to elevate his legs from the seated position to a height of four to six inches. Due to his alleged breathing difficulties, the claimant should avoid contact with noxious fumes, odors, and pulmonary irritants. Due to anger issues, the claimant should only have occasional contact with the public, coworkers, and supervisors.

(A.R. 22). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 22-26). Plaintiff was unable to perform any past relevant work. (A.R. 26). Plaintiff was 47-years-old on the date his disability insured status expired. Thus, at all times relevant to his claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 26). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 26). The ALJ found that the transferability of job skills was not material to a determination of disability. (A.R. 27). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 5,600 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 53-55). The ALJ found that this constituted a significant number

of jobs. Using Rules 201.28 and 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 27-28).

## 1.

Plaintiff's arguments that the Appeals Council committed errors must be ignored. The Appeals Council denied review. The scope of the court's review is defined by statute and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

Plaintiff asks the court to overturn the Commissioner's decision on the basis of evidence that he never presented to the ALJ. (Plf. Brief at 4-5, 14-16; Reply Brief at 2, 4-5). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision on the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653–54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon,* 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff seeks an order remanding this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of evidence from Marvin Bleiberg, M.D., generated after the ALJ's decision. (Plf. Brief at 5, 14-16). Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff's motion will be denied because he has not satisfied his statutory burden.

The evidence that plaintiff attached to his brief consists of the following items: a progress note dated December 19, 2012 (docket # 13-1), a "Physical Medical Source Statement" dated January 4, 2013 (docket # 13-2), and a document labeled as "January 9, 2013, Recorded

Statement of Dr. Marvin Bleiberg" (docket # 13-3). This evidence is new because it was generated months after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

Contrary to plaintiff's assumption, "good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. The proffered transcript of a conversation between plaintiff's attorney and Dr. Bleiberg indicates that plaintiff "first came to see [Dr. Bleiberg] on December 19, 2012." (docket # 13-3, ID# 474). Thus, Dr. Bleiberg did not have any consulting relationship with plaintiff until two months after the ALJ entered his decision and over one year after plaintiff's insured status expired. Dr. Bleiberg did not provide treatment. He saw plaintiff on one occasion in December 2012, and provided statements that plaintiff was "incapable of gainful employment" (docket # 13-1, ID# 468), had extreme physical restrictions (docket # 13-2), and that those restrictions would have been in effect years before Bleiberg's first contact with plaintiff. (docket # 13-3, ID# 477). The issues of disability and RFC are reserved to the Commissioner. 20 C.F.R. § 404.1527(d). The exhibits generated by the consultive examiner more than a year after plaintiff's disability insured status had expired and months after the ALJ's decision

would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled during the period at issue: March 1, 2010 through June 30, 2011.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. His request for a sentence-six remand is denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

### 2.

Plaintiff argues that the ALJ committed reversible error when he failed to find that plaintiff's L5-S1 radiculopathy was a severe impairment. (Plf. Brief at 9-10; Reply Brief at 1-2). The finding of a severe impairment at step 2 is a threshold determination. The finding of a single severe impairment is sufficient to require continuation of the sequential analysis.[1] *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had three severe impairments. (A.R. 19). The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir.

---

[1]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

2008).  The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC.  (A.R. 18, 22).

**3.**

Plaintiff presents a variety of arguments in section II of his brief.  (Plf. Brief at 10-14).  He argues that the ALJ "cherry-picked" the administrative record, that the ALJ's factual findings regarding his credibility and RFC are not supported by substantial evidence, and that the vocational expert testimony was flawed.  (*Id.*).  These arguments do not provided a basis for disturbing the Commissioner's decision.

A.    <u>"Cherry-Picking"</u>

Plaintiff accuses the ALJ of "cherry-picking" the portions of the record that were unfavorable to his claim for DIB benefits.  (Plf. Brief at 10-11).  The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence."  *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).  The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The court finds that the ALJ's decision provides an accurate summary of the administrative record.

B.    Credibility

Plaintiff argues that the ALJ erred in assessing his credibility.  (Plf. Brief at 10).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the

province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.

1987).  It is the ALJ's function to determine credibility issues.  *See Siterlet v. Secretary of Health*

*& Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The court does not make its own credibility

determinations.  *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  The court's

"review of a decision of the Commissioner of Social Security, made through an administrative law

judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir.

2005).  The Commissioner's determination regarding the credibility of a claimant's subjective

complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential

standard of review."  *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012).  "Claimants

challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152

F. App'x 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."

*Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference,

because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective

complaints."  *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287

(6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff presented little medical evidence for the period at issue:  March 1, 2010,

through June 30, 2011.  On March 1, 2010, David Carr, D.O., conducted a consultative examination

in connection with plaintiff's worker's compensation claim. (A.R. 281-87). Plaintiff stated that he had taken courses in medical coding and medical transcription and believed that he could still perform work. (A.R. 284). "Upon examination, Dr. Carr noted the claimant was not wearing a lumbar spine brace or using an assistive device (B3F/4). He indicated the claimant had no observable atrophy and reported tenderness in the midline from L2 through S1 (B3F/5). Dr. Carr recommended the claimant undergo x-rays on his lumbar spine and an electromyography (EMG) test (B3F/6)." (A.R. 23; *see* A.R. 281-87).

On July 7, 2010, plaintiff was examined by Robin Shook, N.P. Plaintiff related that he had significant back pain and had experienced a recent episode of tight sensation over his heart. (A.R. 270-71). Plaintiff's chest x-rays and electrocardiogram returned normal results. (A.R. 273-75). Four months later, plaintiff returned to Nurse Shook and complained of pain in his right shoulder and right leg. (A.R. 268-69). X-rays of plaintiff's shoulder returned normal results. (A.R. 272).

On December 16, 2010, Val D. Syring, D.O., conducted electrodiagnostic studies. (A.R. 337). Plaintiff stated that he had a "history of radiculopathy on the right." (*Id.*). The nerve conduction study revealed no evidence of polyneuropathy. Dr. Syring interpreted the EMG as indicating "chronic neuropathic changes and strong L5-S1 innervated muscles consistent with previous L5-S1 radiculopathy. There [were] no active or acute changes" occurring at that time. (*Id.*).

On May 4, 2011, plaintiff returned to Nurse Shook. His chief complaint was right hip pain. Plaintiff stated that he was "unable to do anything." Shook gave plaintiff a prescription for pain medication and advised him to lose weight. (A.R. 266-67).

Plaintiff's disability insured status expired on June 30, 2011. Shortly thereafter, on July 9, 2011, Michael Simpson, M.D., conducted a consultative examination. (A.R. 277-80). The ALJ summarized Dr. Simpson's findings as follows:

> Upon examination, Dr. Simpson noted the claimant walked with a mild limp, but he did not require the assistive device that he brought with him to the evaluation (B2F/3). He indicated the claimant's breath sounds were normal and he did not have any wheezing, rales, or rhonchi (B2F/3). Dr. Simpson stated the claimant had normal grip strength, normal dexterity, had no difficulty getting on and off the examination table, and had only mild difficulty heel walking and toe walking (2BF/4). He indicated that the claimant had "mild to moderate" difficulty squatting but had negative straight leg raising (B2F/4). Dr. Simpson also reported the claimant had only mildly reduced range of motion in his dorsolumbar spine (B2F/4). He diagnosed the claimant with back pain status post [2006] surgery.

(A.R. 24).

It was against this backdrop that the ALJ considered plaintiff's testimony. Plaintiff testified that with four rest breaks, he was able to drive the 94 miles to his hearing. (A.R. 39). He testified that during a typical day he played games on his computer and watched television. (A.R. 40). He stated that he could not work, because he needed to lie down during the day for pain relief. (A.R. 40). He conceded that no doctor had expressed an opinion that he should not work. (A.R. 41). Plaintiff stated that he did not sleep well at night and that the Vicodin and Naproxin that he was then taking for pain relief made him feel drowsy and tired. (A.R. 41, 43, 45). The ALJ considered these statements and other aspects of the plaintiff's testimony and found that plaintiff's testimony was not fully credible. (A.R. 25-26). Plaintiff's extensive daily activities undercut his claims of disabling functional limitations. (A.R. 26). *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff generally took over-the-counter medication during the period at issue. He began taking medications causing substantial side effects long after his disability insured status had expired. (A.R. 294-95,

302). He required "rare" treatment for asthma. He did not require any treatment or counseling for post-traumatic stress disorder before his date last disability insured. (A.R. 26).                    Plaintiff's burden on appeal is much higher than identifying evidence on which the ALJ could have made a factual finding in his favor. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

C.     RFC

Plaintiff argues that the ALJ erred when he found that plaintiff retained the RFC for a limited range of sedentary work. (Plf. Brief at 11). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1); *Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013). The court finds that the ALJ's factual finding that plaintiff retained the RFC for a limited range of sedentary work is supported by more than substantial evidence.

D.     <u>Vocational Expert Testimony</u>

Plaintiff argues that the "ALJ's hypothetical [question] failed to accurately portray the Plaintiff's limitations." (Plf. Brief at 13). This is a mere reformulation of plaintiff's attacks on the ALJ's factual findings regarding his credibility and RFC. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations he found to be credible.

Plaintiff argues that the VE's testimony was inadequate because the VE indicated that plaintiff "would be able to perform a job as a machine tender and listed a DOT code of 690.65-019." Plaintiff asserts that "a review of the Dictionary of Occupational Titles [reveals] that no such DOT code exists." (Plf. Brief at 13) (citing Tr. 55). Plaintiff's reproduction of the DOT code cited by the VE is not accurate. The DOT code that the VE cited for "machine tender" was "690-685-019." (A.R. 55). The correct code for a machine tender is "609.685-018."[2] The VE's trivial citation error is not a basis for overturning the Commissioner's decision.

Plaintiff's remaining challenge to the VE's testimony is not well developed. The only legal authority he cites is a vague allusion to SSR 00-4p. (Plf. Brief at 13-14). Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

---

[2]*See* United States Department of Labor, Office of Administrative Law Judges Library, Dictionary of Occupational Titles (4th ed. 1991), http://www.oalj.dol.gov/PUBLIC/DOT06A.HTM (last visited March 27, 2014).

Even assuming that plaintiff did not waive this issue, it is meritless. "In the Sixth Circuit, the ALJ's duty [under SSR 00-4p] is satisfied if he or she asks the VE whether his or her testimony is consistent with the DOT." *Johnson v. Commissioner*, 535 F. App'x 498, 508 (6th Cir. 2013). The ALJ made the necessary inquiry. (A.R. 52). *See Kyle v. Commissioner*, 609 F.3d 847, 858 (6th Cir. 2010). "The ALJ had no duty under S.S.R. 00-4p to interrogate [the VE] further." *Lindsley v. Commissioner*, 560 F.3d 601, 606 (6th Cir. 2009). In addition, plaintiff's attorney had a "full opportunity" to question the VE. *Id.* He never posed questions to the VE based on alternative sources of vocational information. He elected not to ask the VE any questions regarding potential conflicts between his testimony and the DOT. (A.R. 56-57).

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated: March 28, 2014          /s/ Joseph G. Scoville_____
                               United States Magistrate Judge